1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTHONY DEAN SLAMA, | ) | 1:11-cv-00282-DLB (HC) |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS, DIRECTING CLERK OF |
| v. | ) | COURT TO ENTER JUDGMENT IN FAVOR |
| | ) | OF RESPONDENT, AND DECLINING TO |
| | ) | ISSUE CERTIFICATE OF APPEALABILITY |
| KATHLEEN ALLISON, Warden, | ) | |
| | ) | [Document 1] |
| Respondent. | ) | |
| | ) | |

9
10
11
12
13
14
15
16

17    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18 pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to

19 the jurisdiction of the United States magistrate judge. Local Rule 305(b).

20                                                    BACKGROUND

21    Following a jury trial in the Superior Court of Madera County, Petitioner was convicted

22 of possession of a controled substance and possession of drug paraphernalia.  Petitioner was

23 sentenced to nine years in state prison.

24    On September 1, 2009, the California Court of Appeal for the Fifth Appellate District

25 affirmed Petitioner's convictions.  The California Supreme Court denied review.

26    On February 17, 2010, Petitioner filed a petition for writ of certiorari in the United States

27 Supreme Court.  On April 26, 2010, the Supreme Court denied the petition.

28

On April 27, 2010, Petitioner filed a petition for writ of habeas corpus in the Madera County Superior Court.  On January 3, 2011, the court denied the petition.

On April 4, 2011, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  On September 14, 2011, the court denied the petition.

On February 17, 2011, Petitioner filed the instant federal petition for writ of habeas corpus in this Court.  Respondent filed an answer to the petition on January 30, 2012, and Petitioner filed a traverse on June 25, 2012.

## STATEMENT OF FACTS[1]

City of Madera Police Officer Juan Villegas testified that on Sept 28, 2005, while investigating a report of "[a] subject ... probably looking over fences," he encountered [Petitioner] in an alley. The officer made contact with [Petitioner] and, as the officer "patted [Petitioner] down for weapons," the officer "asked [Petitioner] at the same time if he had any weapons or drugs or if he used any ...." [Petitioner] responded that he did not have any drugs in his possession but that "he does use drugs"; he "used two days ago" and "he only has a pipe in his pocket ...." As he admitted having the pipe, [Petitioner] "immediately pulled it out ...."

The officer "felt something, felt like a pipe" as he was patting [Petitioner] down. The officer felt the pipe at "pretty much … the same time" [Petitioner] stated he had the pipe. The officer did not remember if, when he felt the object, he asked [Petitioner] what it was. The questioning described by the officer and the pat search took "a couple of seconds."

Officer Jason Gutknecht arrived on the scene as [Petitioner] was conducting the pat search. The pipe was handed over to him.

At no time did Officer Villegas place [Petitioner] under arrest or advise him of his rights under *Miranda*.

Officer Gutknecht testified that as he arrived on the scene, Officer Villegas was "speaking with [Petitioner]." Officer Villegas had "detained" [Petitioner] but had not arrested him. Officer Villegas "told [Petitioner] that he believed he had a glass pipe in his pocket and at that time [Petitioner] reached in his pocket and pulled it out." [Petitioner] handed the pipe [to] Officer Gutknecht.

"Officer Villegas searched the immediate area and [Officer Gutknecht] continued to speak with [Petitioner]. Just, I guess, small talk, why we were there ...."

Approximately "[a] minute or two after" [Petitioner] produced the pipe, he stated he had smoked methamphetamine approximately 30 minutes prior to Officer Gutknecht's arrival.

---

[1]The statement of facts is quoted directly from the unpublished opinion of the Fifth District Court of Appeal and is presumed correct. 28 U.S.C. § 2254 (e)(1).

Asked if he "ask[ed] [Petitioner] any questions to elicit that statement," Officer Gutknecht responded, "No, not really. It was just small talk. I didn't ask him any specific questions, when did he smoke it last or anything like that, no." The officer was "just basically talking to [Petitioner], telling him why [the officer was] there." He did ask [Petitioner] "why he would be there at that time, stuff like that."

At some point after [Petitioner] stated he had smoked methamphetamine 30 minutes previously, Officer Gutknecht, who placed a call to police dispatch by means of the police radio attached to his uniform to determine if [Petitioner] was on parole, learned that [Petitioner] was subject to a parole hold. A "split second" later, Officer Villegas found a quantity of methamphetamine. At that point, after Officer Villegas found the methamphetamine and approximately two to three minutes after first making contact with [Petitioner], Officer Gutknecht handcuffed [Petitioner] and placed him under arrest.

DISCUSSION

I.      Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States;
or
(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)).  "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.  Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009).  Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011).  Under § 2254(d)(1), review is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

1   and based on a factual determination will not be overturned on factual grounds unless objectively

2   unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

3   Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254

4   apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v.

5   Blodgett, 393 F.3d 943, 976-77 (2004).

6          Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501

7   U.S. 979, 803 (1991).  However, "[w]here a state court's decision is unaccompanied by an

8   explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

9   basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

10   III.   Violation of Fifth Amendment Right Against Self-Incrimination

11          Petitioner contends that the trial court erred in failing to exclude incriminating statements

12   he made to the police during a "custodial interrogation" that was not preceded by Miranda[2]

13   warnings.  The appellate court denied the claim in the last reasoned decision stating:

> As indicated above, appellant argues the court erred in failing to exclude
> incriminating  statements he made to police because, he contends, he made those
> statements during a "custodial interrogation" that was not preceded by *Miranda* warnings.
> The People do not dispute that appellant was interrogated by police. Rather, the People
> argue that appellant was not subject to a custodial interrogation, and that therefore
> *Miranda* admonitions were not required.
>
> In *Miranda*, the United States Supreme Court "determined that the Fifth and
> Fourteenth Amendments' prohibition against compelled self-incrimination required
> that custodial interrogation be preceded by advice to the putative defendant that he
> has the right to remain silent and also the right to the presence of an attorney."
> *(Edwards v. Arizona* (1981) 451 U.S. 477, 481-482.) Statements obtained in violation
> of *Miranda* are not admissible to prove the accused's guilt in a criminal prosecution.
> (*Miranda, supra*, 384 U.S. at pp. 444-445.)
>
> "But in order to invoke [the] protections [of *Miranda*], a suspect must be
> subjected to custodial interrogation, i.e., he must be taken into custody or otherwise
> deprived of his freedom in any significant way. [Citation.] [T]he ultimate inquiry is
> simply whether there is a formal arrest or restraint on freedom of movement of the
> degree associated with a formal arrest." (*People v. Morris* (1991) 53 Cal.3d 152, 197,
> citing *California v. Beheler* (1983) 463 U.S. 1121, quoting *Oregon v. Mathiason*
> (1977) 429 U.S. 492, 495, internal quotation marks omitted.) The determinative
> question is "whether a reasonable person in the defendant's position would have felt
> he or she was in custody." (*People v. Stansbury* (1995) 9 Cal.4th 824, 830 (*Stansbury II*).)
> Thus, "Custody determinations are resolved by an objective standard: Would a

---

[2] Miranda v. Arizona, 384 U.S. 436 (1996).

5

reasonable person interpret the restraints used by the police as tantamount to a formal arrest?" (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403.)

In making this determination, "'the totality of the circumstances is relevant, and no one factor is dispositive. [Citation.] However, the most important considerations include (1) the site of the interrogation, (2) whether the investigation has focused on the subject, (3) whether the objective indicia of arrest are present, and (4) the length and form of questioning.'" (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1050 (*Stansbury I*).) The United States Supreme Court has recognized that "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." (*Oregon v. Mathiason, supra*, 429 U.S. at p. 495.)

"The trial court's resolution of factual disputes is to be affirmed if it is based on substantial evidence. [Citations.] 'We must accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported. [Citations.] However, we must independently determine from the undisputed facts, and those properly found by the trial court, whether the challenged statement was illegally obtained.'" (*Stansbury I, supra*, 4 Cal.4th at p. 1050.)

Here, the trial court reasonably could have found, based on the undisputed evidence adduced at the section 402 hearing, as follows: at the time appellant made his incriminating statements he had not been placed under arrest nor was there any evidence of indicia of formal arrest, such as handcuffing; he was in a public place--an alley--which, although presumably not a particularly well-traveled public thoroughfare, was not like the police-dominated setting of a police station (*cf. People v. Morris, supra*, 53 Cal.3d at p. 198 [interrogation held noncustodial based in part on the fact that "[t]he inquiry did not take place in jail or on police premises, but in defendant's own motel room . . . ."]); there is no indication the officers displayed their weapons or made any threats; and the interrogation during which appellant made the incriminating statements was brief, spanning approximately two to three minutes from the time of Officer Villegas's contact with appellant to that point at which Officer Gutknecht handcuffed appellant and placed him under arrest. On this record, we conclude that under the totality of the circumstances, at the time appellant made his incriminating statements, a reasonable person in appellant's position would not have concluded that the restraints placed on him by Officers Villegas and Gutknecht were tantamount to formal arrest.

The instant case is similar to *People v. Manis* (1969) 268 Cal.App.2d 653 (*Manis*). In that case, police were patrolling an area in which typewriters had been stolen. The officers observed Manis carrying a new portable typewriter case and heading for the pawnshop area. Manis's conduct, after discovering the officers' observation, was evasive. Accordingly, the officers stopped Manis and asked where he was going and what was in the case. Manis answered that they were radios. The officers asked whether Manis had a receipt, and he replied, "'No,' ... 'I stole them.'" The officers then arrested Manis and gave *Miranda* warnings. (*Id*. at pp. 657-658.)

The court noted that temporary detentions encompass a limited restriction of the personal mobility of a suspect, for a brief period of time, usually in a public place, normally without transfer to another location. The limited restriction may be accompanied by brief questioning on matters that have aroused the suspicion. (*People v. Manis, supra*, 268 Cal.App.2d at p. 663.) Thus, "persons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not

1  be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive." (*Id*. at p. 669.)

3  Here, as in *Manis*, although appellant was subjected to pointed questioning by police, that questioning was brief and never became sustained or coercive. The nature of the questioning is a factor we consider, but as in *Manis*, that questioning did not turn the encounter into a custodial interrogation. As our Supreme Court stated in *People v. Farnam* (2002) 28 Cal.4th 107, 180, "the term 'custody' [for *Miranda* purposes] generally does not include 'a temporary detention for investigation' where an officer detains a person to ask a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. [Citation.]"

8  Appellant argues as follows: police officers asked him "potentially incriminating questions" and made a "show of force, with two officers present," while conducting "an ongoing criminal investigation"; under these circumstances, a reasonable person would not have felt "free to leave or terminate the encounter"; and therefore Officers Villegas and Gutknecht, in questioning appellant, conducted a custodial interrogation. There is no merit to this contention. As we explain below, the free-to-leave-or-terminate-the-encounter standard is not applicable here.

12  That standard is applicable in the Fourth Amendment context: "A seizure within the meaning of the Fourth Amendment occurs whenever an individual's liberty is restrained by the police, either by physical force or an assertion of authority, to which the individual submits, in circumstances in which a reasonable person would have believed he or she was not *free to leave*." (*People v. Hester* (2004) 119 Cal.App.4th 376, 385 italics added.) And there is no dispute appellant was subject to this kind of seizure, commonly referred to as a detention. (*See Florida v. Bostick* (1991) 501 U.S. 429, 439 (*Bostick*).) However, "[w]hether an individual has been ...seized for Fourth Amendment purposes and whether that individual is in custody for *Miranda* purposes are two different issues." (*People v. Pilster, supra*, 138 Cal.App.4th at p. 1405; *accord U.S. v. Kim* (9th Cir. 2002) 292 F.3d 969, 976.) In determining whether an individual is in custody for purposes of *Miranda*, the issue "'is not whether a reasonable person would believe he was not free to leave, but rather whether such a person would believe he was in police custody of the degree associated with formal arrest.'" (*People v. Pilster, supra*, 138 Cal.App.4th at p. 1403, fn. 1; *accord, Doe v. Bagan* (10th Cir. 1994) 41 F.3d 571, 575, fn. 3 [nine-year-old interrogated in principal's office not in custody for *Miranda* purposes despite belief that he was not free to leave]; *U.S. v. Pelayo-Ruelas* (8th Cir. 2003) 345 F.3d 589, 592 [court "reject[ed] [defendant's] broad contention that a person is in custody for *Miranda* purposes whenever a reasonable person would not feel free to leave," noting that although "[o]ne is not free to leave a *Terry* stop [*see Terry v. Ohio* (1968) 392 U.S. 1] until the completion of a reasonably brief investigation, which may include limited questioning," "most *Terry* stops do not trigger the detainee's *Miranda* rights"]; *U.S. v. Swanson* (6th Cir. 2003) 341 F.3d 524, 529 [defendant "not subject to custodial interrogation" where, "[a]lthough [he] was not free to leave during the questioning, the restraint exercised never reached the level associated with "'formal arrest or a coercive context tantamount to custody'"].)

25  Appellant argues that *People v. Manis, supra*, 268 Cal.App.2d 653, discussed above, is not good authority on the question of what constitutes custodial interrogation because it has been "effectively super[s]eded" by *Bostick, supra*, 501 U.S. 429 and *Florida v. Royer* (1983) 460 U.S. 491 (*Royer*). (Emphasis omitted.) This is incorrect. As our Supreme Court has stated, each of these cases indicate that "[i]t is well established

7

1   that law enforcement officers may approach someone on the street or in another public
2   place and converse if the person is willing to do so. There is no *Fourth Amendment*
    *violation* as long as circumstances are such that a reasonable person would feel free to
3   leave or end the encounter." (*People v. Rivera* (2007) 41 Cal.4th 304, 309, citing, *Bostick,*
    *Royer* and *Manuel G.*, italics added.) Because *Bostick* and *Royer* are Fourth Amendment
4   cases, neither has any bearing on the question of whether a police encounter qualifies as a
    custodial interrogation for *Miranda* purposes.

5           Here, as demonstrated above, appellant was not subject to police "restraints
6   ...tantamount to formal arrest." (*People v. Pilster, supra*, 138 Cal.App.4th at p. 1403.)
    The fact that a reasonable person in his position would not have felt free to leave or
7   terminate  the encounter, and that therefore appellant was seized within the meaning of
    the Fourth Amendment, does not establish otherwise.

8   (Opinion, at 4-9.)

9           Here, the appellate court found that Petitioner was not subject to a custodial interrogation

10  prohibiting him from provoking the protections of <u>Miranda</u>.  Under <u>Miranda</u>, a person in custody

11  must be informed before interrogation that he has a right to remain silent and to have a lawyer

12  present.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602 (1966). "If the police take a suspect

13  into custody and then ask him questions without informing him of the rights enumerated [in

14  <u>Miranda</u>], his responses cannot be introduced into evidence to establish his guilt." <u>Berkemer v.</u>

15  <u>McCarty</u>, 468 U.S. 420, 429 (1984). Thus, in order for <u>Miranda</u> to apply, two elements must both

16  exist simultaneously: custody and interrogation. <u>Id</u>.; <u>Rhode</u> <u>Island v. Innis</u>, 446 U.S. 291, 300

17  (1980); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 247 (1973).  Absent one of the factors,

18  <u>Miranda</u> is simply not applicable.  <u>Mathis v. United States</u>, 391 U.S. 1, 5 (1968).  In determining

19  whether an individual is in custody "the ultimate inquiry is simply whether there is a formal

20  arrest, or restraint on freedom of movement of the degree associated with formal arrest."

21  <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983).

22          Petitioner has failed to demonstrate he was subjected to a custodial interrogation making

23  inadmissable his statements to police. On September 28, 2005, Petitioner was confronted and

24  questioned by officers Villegas and Gutknecht in an alley as he fit the description of a reported

25  individual "probably looking over fences." At the same time officer Villegas "patted down"

26  Petitioner for weapons he asked him if he had any drugs or used drugs.  Petitioner responded

27  saying he did use drugs and admitted to having a pipe. Officer Villegas felt the pipe at the same

28

1  time Petitioner stated he had the pipe.  The questioning and "pat down" of Petitioner took less

2  than a minute.  At no time during the contact with Petitioner did officer Villegas place him under

3  arrest.

4        Moments later, officer Gutknecht arrived on the scene and observed officer Villegas

5  speaking with Petitioner. Officer Gutknecht continued small talk with Petitioner who voluntarily

6  admitted he had smoked methamphetamine approximately thirty-minutes prior to his arrival on

7  the scene. Soon after Petitioner stated he had smoked methamphetamine the officers discovered

8  Petitioner was on parole. Additionally, officer Villegas found a tupperware container containing

9  methamphetamine in the alley in close proximity to where he first made contact with Petitioner.

10 At that point, officer Gutknecht handcuffed Petitioner and placed him under arrest.

11       The entire event, from first contact with Petitioner by officer Villegas to his arrest by

12 officer Gutknecht, lasted approximately two to three minutes.  Petitioner was not handcuffed

13 when he made the statements he seeks to exclude.  Nor were the statements elicited by the

14 officers' interrogative questioning rather they were freely offered by Petitioner while he was

15 detained for general investigative purposes.  Petitioner's argument that he felt he was not free-to-

16 leave has no bearing on determinations of "custody" for Miranda purposes because he was not

17 under arrest.  Accordingly, the state courts' determination of this issue was not contrary to, or an

18 unreasonable application of, clearly established Supreme Court precedent.

19 IV.    Ineffective Assistance of Trial and Appellate Counsel

20       Petitioner contends defense counsel was ineffective based on numerous grounds.  He

21 alleges ineffectiveness based on counsel's failure to (a) investigate through discovery the number

22 of officers present at the scene, (b) investigate "possible meritorious claims," (c) raise certain

23 objections in court, and (d) exclude "false evidence." (Pet. at 5).  Petitioner's ineffective

24 assistance claims against trial counsel and appellate counsel are both based on the same

25 abovementioned conduct making separate analysis unnecessary.

26        The Madera County Superior Court denied Petitioner's claims on the merits in the last

27 reasoned decision.

28

A.   State Court Analysis

The Superior Court held as follows:

Petitioner does not allege facts establishing good cause for delay in seeking relief from judgment in the trial court. The jury verdict in the underlying case was entered May 2, 2008. Nearly two years elapsed between judgment in the trial court and the time Petitioner raised the issue of ineffective assistance of trial counsel in the petition now before the court (Petition filed April 27, 2010), despite the pendency of a direct appeal. Petitioner has had knowledge of the facts based upon which he claims ineffective assistance of appellate counsel since the time of submission of briefs in the appellate case (when defendant was apprised of the failure of appellate counsel to raise trial counsel's failure to seek a suppression motion, one of Petitioner' claimed bases for seeking writ relief herein). (*See, In re Sanders* (1999) 21 Cal.4th 697, 703-705; *In re Robbins* (1998) 18 Cal.4th 770, 780.) Petitioner has failed to bring his claim within an exception to the timeliness bar (*See, Robbins, supra*, 18 Cal.4th at 780-781).

[¶]

As to ineffective assistance of counsel (both trial and appellate), Petitioner has failed to establish a prima facie case rendering the Petition herein subject to summary denial. Even assuming Petitioner's factual allegations are true, Petitioner would not be entitled to relief (*People v. Duvall* (1995) 9 Cal.4th 464,474-475). Petitioner offers no evidence that the decisions and actions of his counsel, or either of them, fell below the objective standard of reasonableness under prevailing professional norms nor has Petitioner established that there is a reasonable probability that a more favorable result would have been obtained in the absence of his respective counsel's failings.

Petitioner has not met the burden of showing a probability of a more favorable result sufficient to undermine confidence in the outcome of the issue (*People v. Cox* (1991) 53 Cal.3d 618,656; *People v. Ledesma* (1987) 43 Cal.3d 171, 216 and 218, quoting *Strickland v. Washington* (1984) 466 US 668,688).

(Opinion, at 2-3.)

B.   Procedural Default

The state appellate court's determination was not unreasonable.  Petitioner's ineffective

assistance of counsel claims are procedurally barred from review.  He did not file the instant

petition raising the issue of ineffective counsel for the first time until nearly two years after the

state court's judgment.  A federal habeas court will not review a claim rejected by a state court

"if the decision of [the state] court rests on a state law ground that is independent of the federal

question and adequate to support the judgment."  See Walker v. Martin, 131 S.Ct. 1120, 1127

(2011).  The state law ground may be a procedural barrier to adjudication of the claim on the

merits.  Id.  Under California law, a prisoner must seek habeas relief without "without substantial

1  delay" as "measured from the time the petitioner or counsel knew, or reasonably should have

2  known, of the information offered in support of the claim and the legal basis for the claim." See

3  In re Clark, 5 Cal.4th 750 (1993); see also In re Robbins, 18 Cal.4th 770 (1998).  Two exceptions

4  exist allowing a federal court to hear a petitioner's claims who has been procedural barred in

5  state court, if (1) a showing of good cause for his or her failure to exhaust the claim and prejudice

6  from the alleged constitutional violation; or (2) a fundamental miscarriage of justice. Cooper v.

7  Neven, 641 F.3d 322, 327 (9th Cir. 2011).  Petitioner does not satisfy either of the two

8  exceptions. The state court may have reasonably found Petitioner's argument that various address

9  changes, yard placements, and "unprecedented lockdowns" limiting law library access within the

10 prison was not good cause for his failure to timely file his petition. (Lod. Doc. 13 at 3.)  Nor is

11 there a fundamental miscarriage of justice in procedurally barring Petitioner's claim from review.

12 The state court noted Petitioner was aware at the time he submitted his appellate briefs of all the

13 facts for his ineffective assistance claims.  Based on the state court's judgment as to the

14 untimeliness of the petition and Petitioner's failure to provide an adequate reason to justify his

15 delay the petition is procedurally barred from review.

16 C.    Merits

17        Alternatively, the state court rejected Petitioner's claims on the substantive merits.  The

18 law governing ineffective assistance of counsel claims is clearly established for the purposes of

19 the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226,

20 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective assistance of

21 counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687

22 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

23 counsel's performance was deficient, requiring a showing that counsel made errors so serious that

24 he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland,

25 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective

26 standard of reasonableness, and must identify counsel's alleged acts or omissions that were not

27 the result of reasonable professional judgment considering the circumstances. Id. at 688; United

28

1 States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's

2 performance is highly deferential.  A court indulges a strong presumption that counsel's conduct

3 falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687;

4 Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

5        Second, the petitioner must show that counsel's errors were so egregious as to deprive

6 defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688.  The court must

7 also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

8 ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

9 1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

10 was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that

11 (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would

12 have been different.

13        A court need not determine whether counsel's performance was deficient before

14 examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

15 Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

16 prejudice, any deficiency that does not result in prejudice must necessarily fail. Ineffective

17 assistance of counsel claims are analyzed under the "unreasonable application" prong of

18 Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

19        Where the challenge is to the effective assistance of appellate counsel, the Strickland

20 standard applies in the same manner as claims of ineffective assistance of trial counsel. Smith v.

21 Robbins, 528 U.S. 259, 285 (2000). It is well settled that an attorney cannot be ineffective for

22 failing to make a futile or meritless action.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994)

23 ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.")

24 (citations omitted); Shah v. United States, 872 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to

25 raise a meritless legal argument does not constitute ineffective assistance of counsel.") (citation

26 omitted); Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (same).  Moreover, in Smith, the

27 United States Supreme Court indicated that an appellate attorney filing a merits brief need not

28

and should not raise every non-frivolous claim. <u>Smith v. Robbins</u>, 528 U.S. at 288. Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal. <u>Id.</u>

       1.     <u>"Failure to Investigate" and Confrontation Clause Violation</u>

First, Petitioner contends that counsel was ineffective for failing to identify the 911 caller and in failing to make a "specific objection" to the introduction of the 911 call into evidence precluding him from his right to confront witnesses. (Doc. 49 at 47.) The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. See U.S. Constitution, Amendment VI. In <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the state from introducing out-of-court statements which are testimonial in nature, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the declarant.

Petitioner's emphasis on the identity of the 911 caller is misguided. Counsel's hearsay objection to the admission of dispatch's call to the officers was overruled. (RT at 506.) The state court could have reasonably determined the relevancy of the 911 call to be limited to showing the triggering event that prompted officer Villegas to investigate the alley. Further, the failure to identify the 911 caller did not prejudice Petitioner nor was it unreasonable to conclude there was no need for Petitioner to confront and cross-examine either the 911 caller or the 911 operator as to the substance or truthfulness of the report of a possible prowler.

Second, it is unclear why counsel's failure to discover the presence of a third officer at the scene the night Petitioner was properly detained constitutes a violation of his constitutional right to effective counsel. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 687; <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir.1994). In his traverse, Petitioner makes reference to case authority laying out *relevant factors* to consider when determining whether a defendant believed he or she was free to leave. (Doc. 49 at 64.) Petitioner puts emphasis on the bulleted factor "ratio of officers to

suspect" by circling it.  (Doc. 49 at 65.)  Petitioner's argues "*no one factor is dispositive*" when making the inquiry into whether an individual was in custody for Miranda purposes.  In this instance, there was no need to investigate the number of officers present at the scene because it is irrelevant to the determination of whether Petitioner was lawfully detained.  Thus, the state court could have reasonably determined that counsel's failure to investigate whether a third police officer was present the night Petitioner was detained was not unreasonable nor did Petitioner suffer any prejudice as a result.

Lastly, Petitioner argues counsel was ineffective for failing to fingerprint the tupperware container found in the alley. (Doc. 49 at 48.)  To succeed on the first prong of <u>Strickland</u>, a defendant must overcome a "strong presumption" that counsel's performance fell within the "wide range of reasonable professional assistance," that counsel's's actions and omissions were part of sound trial strategy, and that all significant decisions were the result of reasonable professional judgment. <u>Strickland</u>, 466 U.S. at 689-90**.**  Given the strong circumstantial evidence that Petitioner was in possession of the tupperware container, and Petitioner presents nothing more than his conclusory assertion that the tupperware should have been fingerprinted, the state court could have reasonably found that counsel was not ineffective for failing to fingerprint it, nor was Petitioner prejudiced.   Accordingly, Petitioner is not entitled to habeas corpus relief.

2.    <u>Allowing the Jury to Hear "False Evidence"  and Prosecutorial Misconduct</u>

At the outset, it is unclear how the factual issue of whether Petitioner was on parole or probation on the night of detention is relevant. Petitioner's argument that he was repeatedly called a probationer in front of the jury is simply not true.  In his traverse, Petitioner argues his counsel referred to him as "probationer." (Doc. 49 at 43.)  This is incorrect.  Viewing the transcript it is obvious that counselor Meyer used the term "probationer" in the abstract sense. (RT at 495.)  On cross-examination defense counsel appears to have been bringing out the common practice termed a "dropsy" which consists of a probationer, subject to automatic searches, dropping the illicit item when confronted by the police or a possible search. (RT at 495.)  Petitioner was never once referred to by counsel as a "probationer."

1   Additionally, Petitioner claims the prosecution called him a probationer in closing

2   argument "refreshing the jury's mind." (Doc. 49 at 43.)  This is incorrect.  The prosecution

3   simply made reference to defense counsel's earlier cross-examination addressing the notion and

4   common practice of a probationer performing a "dropsy" when sensing an imminent search.  The

5   state court could have reasonably determined Petitioner's parole/probation status on that night

6   was  inconsequential.  Thus, Petitioner's parole/probation status had no bearing on whether

7   counsel conducted an "adequate investigation" for the purposes of Petitioner's defense nor was

8   he referred to as a "probationer" in front of the jury.

9   Next, Petitioner argues that the prosecution improperly introduced a "thirty-minute

10  statement" at "the eleventh hour before trial." (Doc. 49 at 44.)  Petitioner seeks to exclude the

11  statement made that he had last used drugs thirty-minutes prior to the officers arrival on the

12  scene.  The state court was reasonable in admitting the thirty-minute statement into evidence.

13  Officer Gutknecht testified that he spoke with Petitioner, prior to his arrest, while officer Villegas

14  was searching the area for narcotics.  Petitioner told Gutknecht that he had smoked

15  methamphetamine 30 minutes prior to officer's arrival. (RT 531.)  Defense counsel cross-

16  examined officer Gutknecht and attempted to impeach his testimony by pointing out that he

17  never mentioned in his report, nor was Petitioner found to be under the influence of a narcotic,

18  despite his claim he just smoked 30 minutes prior. (RT 535-537.)  Under these circumstances,

19  the state court could have reasonably found that counsel was not ineffective for failing to exclude

20  this testimony.

21  There is no evidence that Petitioner's counsel's performance fell below an objective

22  standard of reasonableness nor has it been shown that there is a reasonable probability that, but

23  for counsel's purported errors, the result would have been different.  Accordingly, there is no

24  basis for habeas corpus relief.

25  D.    Certificate of Appealability

26  A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

27  district court's denial of his petition, and an appeal is only allowed in certain circumstances.

28

1   Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining

2   whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

3       (a) In a habeas corpus proceeding or a proceeding under section 2255 before a
        district judge, the final order shall be subject to review, on appeal, by the court
4       of appeals for the circuit in which the proceeding is held.

5       (b) There shall be no right of appeal from a final order in a proceeding to test the
        validity of a warrant to remove to another district or place for commitment or trial
6       a person charged with a criminal offense against the United States, or to test the
        validity of such person's detention pending removal proceedings.
7
        (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an
8              appeal may not be taken to the court of appeals from–

9              (A) the final order in a habeas corpus proceeding in which the
               detention complained of arises out of process issued by a State
10             court; or

11             (B) the final order in a proceeding under section 2255.

12             (2) A certificate of appealability may issue under paragraph (1) only if the
               applicant has made a substantial showing of the denial of a constitutional right.
13
               (3) The certificate of appealability under paragraph (1) shall indicate which
14             specific issue or issues satisfy the showing required by paragraph (2).

15      If a court denies a petitioner's petition, the court may only issue a certificate of

16  appealability "if jurists of reason could disagree with the district court's resolution of his

17  constitutional claims or that jurists could conclude the issues presented are adequate to deserve

18  encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473,

19  484 (2000).  While the petitioner is not required to prove the merits of his case, he must

20  demonstrate "something more than the absence of frivolity or the existence of mere good faith on

21  his . . . part." Miller-El, 537 U.S. at 338.

22      In the present case, the Court finds that reasonable jurists would not find the Court's

23  determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

24  deserving of encouragement to proceed further.  Petitioner has not made the required substantial

25  showing of the denial of a constitutional right.  Accordingly, the Court DECLINES to issue a

26  certificate of appealability.

27

28

1

<u>ORDER</u>

2

Based on the foregoing, it is HEREBY ORDERED that:

3

1.      The instant petition for writ of habeas corpus is DENIED;

4

2.      The Clerk of Court is directed to enter judgment in favor of Respondent; and

5

3.      The court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c);

6

<u>Slack v. McDaniel</u>, 529 U.S. at 484.

7

8

IT IS SO ORDERED.

9

**Dated:   July 31, 2012**         _____ **/s/ Dennis L. Beck**_____

10

UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28